## TAYLOR v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4524.

Circuit Court of Appeals, Third Circuit.

Aug. 19, 1931.

Rehearing Denied Sept. 29, 1931.

Albert Smith Faught, of Philadelphia, Pa., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Andrew D. Sharpe, and Norman D. Keller, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Nathan Gammon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This case is here on petition to review an order of redetermination made by the United States Board of Tax Appeals. 17 B. T. A. 1107. The case involves income taxes for the years 1921, 1922, 1923, and 1924, in the aggregate amount of $14,370.17, being the amount of the deficiency found by the Commissioner and approved by the Board.

The petitioner, Taylor, devised a plan designed to enable a newspaper purchasing it to acquire supremacy in the field of classified advertising in its territory. The plan was copyrighted in 1899, and renewed in 1926, as the "Taylor Plan." The details of the plan remain a mystery. The petitioner has continually refused to divulge the details, and each purchaser of the plan must, as a condition of its contract, keep the plan a secret.

Prior to March 1, 1913, the petitioner made four sales of his plan, from which he realized a total compensation of $10,000. After 1919 he sold his plan to a number of newspapers. In particular, this controversy arises out of the sale of the Taylor Plan to the Minneapolis Journal on January 19, 1921.

Section 214(a) (8) of the Revenue Act of 1921 (42 Stat. 239), and section 214(a) (8) of the Revenue Act of 1924, 26 USCA § 955(a) (8) and note, provides: "That in computing net income there shall be allowed as deductions: * * * A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In case of such property acquired before March 1, 1913, this deduction shall be

computed upon the basis of its fair market price or value as of March 1, 1913. * * * *"

■ The petitioner claims (a) that his plan for effecting supremacy of classified advertising is an exhaustible asset within the meaning of the Revenue Act, and (b) that its value is to be based on its fair market value of March 1, 1913.

The Board disposed of these contentions as follows: "It is doubtful, to say the least, whether the petitioner has or had on March 1, 1913, an exhaustible asset in the copyrighted plan in question. We know nothing about it and the petitioner refused to divulge its detail. Whether the petitioner was protected by the copyright in the use of the plan or only in the name 'Taylor Plan,' we know not. However, passing that question and assuming for the moment that the Taylor Plan was an exhaustible asset, we are unable to find any basis for holding that it had any value on March 1, 1913, except a speculative or potential value."

The petitioner says the Board erred in thus disposing of the case because he produced a number of expert witnesses who testified that his plan was worth at least $500,000, and their testimony should have been accepted as to its value. But no facts were disclosed to show on what grounds their conclusions were based. The whole structure, on which they are built, is carefully concealed. The government is not obliged to accept the conclusion of these experts as to the value of the plan without being shown what it is and without being shown some sound basis on which their opinion rests. We are inclined to feel that the intrinsic value of the plan lies in secrecy and in salesmanship.

■ The determination of this case depends in the final analysis upon whether or not the "Taylor Plan" is "property" within the meaning of the act, because the deductions it allows are for the exhaustion, wear, and tear of "property." It is the use in the trade or business of "property" that entitles the taxpayer to a deduction. Unless property is used, no deduction is allowable. In other words, before any plan, idea, theory, or system can be used as an exhaustible asset in an income tax computation, it must be determined that it is "property."

■ It appears that the "Plan" is copyrighted, and the question at once arises as to whether or not the copyright is property. It is true that copyrights are subject to depreciation and may be charged off under the same procedure as patents, taking the term of

the copyright into consideration. Klein, Federal Income Taxation, p. 628 et seq. Copyright laws afford protection for a limited time against the publication only and not against the use of a system or plan or idea of which the work is an exposition. Stone & McCarrick v. Dugan Piano Company (D. C.) 210 F. 399; Baker v. Selden, 101 U. S. 99, 25 L. Ed. 841. A copyright does not give its owner any property in the thing copyrighted. It simply gives him protection against anybody else copying it. Nor does it prevent any one from using the copyrighted matter, if it is not copied or published. The value of the "Taylor Plan" lies in its application and not publication. And so the copyright of the "Plan," whether it discloses the secret features or not, does not help the petitioner, for it is not "property," on the exhaustion, wear, and tear of which a deduction may be based.

■ The scope of the meaning of the term "property," as it is used in the revenue acts, includes both tangibles and intangibles. A taxpayer has the right to take a reasonable allowance for depreciation of an intangible just as in the case of a tangible, if it is property used in the trade or business. But the plan of the petitioner cannot meet the real and definite characteristics that the law requires of "property."

■ What was the "Taylor Plan?" Taylor had an idea, theory, or system in his head. It could not be subject to ownership in a legal sense any more than the multiplication table. Its value, if it has other than the benefit of Taylor's salesmanship, lies, not simply in the plan itself, but in the retention of its details in secret, in being withheld from the public. This in itself is a demonstration that it is not property which is subject to possession and control and may be used as an exhaustible asset in computing deductions in income taxes.

The petitioner and his witnesses did not regard the plan as property, but simply as an idea which, conceivably, might have a potential value of some $500,000. Thus, if it can be thought of as analogous to some inventive idea in any art, it would not become property until it was reduced to practice and patented, or, being a secret idea, like a secret process, it might be sold, and, by virtue of the executory or executed contract, be reduced to a chose in action which is "property."

■ Again, if it is remotely possible that the secret feature of the petitioner's plan might be property, the petitioner was obliged to

918

prove, inter alia, its duration of usefulness. Klein, Federal Income Taxation, p. 630. This he did not do, and we can only speculate that the petitioner would possess the exclusive right to enjoy and use the plan in his business so long as he retained the secret features.

Whatever the "Taylor Plan" may be, the petitioner has failed to show that it is "property" within the meaning of section 214(a) (8) of the Revenue Acts of 1921 and 1924. He must therefore fail, as he has not fulfilled the requirements of the statute.

 Another question remains for our disposal: The proper treatment of the $80,-000 that the petitioner received in 1924 in settlement of his contract with the Journal Printing Company of Minneapolis.

The petitioner sold the use of his plan to the Journal Printing Company at $300 a week for ten consecutive years beginning May 28, 1921, or within three years from that date the Journal Printing Company was to pay the petitioner $100,000 in full settlement of the contract. All weekly payments theretofore made were to be credited as a part of the $100,000. However, during the years 1921, 1922, and 1923, the weekly payments were not made, and the petitioner, who kept his accounts on the accrual basis, charged off at the end of each year all but $1 of the accounts, leaving them open with that balance. In 1924 the petitioner and the Journal Printing Company effected a settlement of the obligations arising under the contract of 1921, whereby the Journal Printing Company paid to the petitioner a total of $80,000 in full settlement. The petitioner then without objection re-entered on his books the amounts that had been accrued under the contract during the years 1921, 1922, and 1923; but also accrued for 1924, 1925, and 1926, maintaining his tax return so as to pay the taxes on the moneys received. The Commissioner of Internal Revenue allowed the petitioner to accrue the sum of $300 a week from May 28, 1921, through 1924, but treated the balance of the settlement as income for 1924, for the reason that even under the accrual system periodical payments cannot be spread into the future.

Before the settlement in 1924, the petitioner had a right to receive $300 a week during the coming years in which the contract was in force. He could have continued using the accrual basis to reflect his income until the term of the contract was ended. But a settlement was reached. No further payments were to be made, and the moneys accepted by the petitioner were in lieu of prior and future payments due under the contract. With the settlement the contract was completed, and nothing further could be accrued under the closed transaction. It is clear that no accrual entries can be made in the future and advantage be taken of them when in fact no payments are to be made or accrued in the future. The law requires a taxpayer's return to reflect his true income.

Relying on the recent case of Burnet v. Sanford & Brooks, 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, and related cases, the petitioner says: "The clear inference (from these cases) is that if the taxpayer had kept its books on the accrual basis (and the present petitioner does so keep his books), payments under a contract, even when the contract is enforced by suit by the taxpayer, are income not when the money is received, but as it accrues under the contract." That is a correct statement of the law, and we are of the opinion that, if it is applied in this case, the amount of the settlement (except that part allocated to the years 1921, 1922 and 1923) is income for the year 1924 for the reason that it accrued in that year; the contract being at an end and superseded by the settlement.

The redetermination of the Board of Tax Appeals is affirmed.