## AFFILIATED ENTERPRISES, Inc., v. GANTZ.*

### No. 1408.

Circuit Court of Appeals, Tenth Circuit.

Dec. 3, 1936.

Emmett Thurman, of Denver, Colo., and Eldon J. Dick, of Tulsa, Okl., for appellant.

W. L. Coffey, of Tulsa, Okl. (Coffey & Coffey, of Tulsa, Okl., on the brief), for appellee.

*Rehearing denied Jan. 28, 1937.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

There is diverse citizenship. The bill, dismissed on demurrer, sets forth a so-called system or plan for giving away money prizes by lot or chance in theatres or other places of entertainment open to the public on payment of an admission fee. The plan or system was devised and formulated by plaintiff for the purpose of licensing its use to others, and it has given licenses to many for a money consideration to use it and has received large profits thereby. Those who became licensees receive printed instructions describing the plan or system and the manner in which it is to be used: (a) Registration of names and addresses by those who desire to participate. Registration is free and open to the public in the lobby of the theatre, whether they buy or do not buy admission tickets. The registrants receive consecutive numbers in the order of registration on the registration book and can register only once. Children under 17 may not participate. (b) A series of drawing cards are made out corresponding with the registration numbers and put into a receptacle from which the drawing will be made. (c) An advance deposit in a local bank of the amount of each award is made, and the name of the bank advertised. (d) Advertisements of the plan and of the drawing and when it will be held. (e) A drawing of card or cards as advertised, each containing a number or name or both as registered, from a receptacle on the stage on the night advertised. Then the winner is announced both inside and outside the theatre, and the lucky person, if he be on the outside, may come in for identification without paying an admission fee. If he does not then claim the award, the amount of that drawing is to go over and be added to the amount of the next drawing and so on, until the last night's lucky person may appear and claim all of it.

There are no allegations that plaintiff conducts or ever conducted a place of public entertainment or amusement and utilized the plan or system. It conceived and formulated the plan or system and organized as a corporation for the purpose of leasing the use of it to others for a money consideration, and it has given many such leases. It claims to be the owner, alleges it has a property right therein, that defendant is using its plan and system at his theatre in Sand Springs, Oklahoma, and seeks to enjoin him from further use and for damages and profits realized from its use.

The plaintiff, in further support of its claimed rights to said plan and system and to the relief which it seeks, alleges that as author and proprietor of said plan and system it has procured copyright thereon in accordance with the statutes of the United States and is the owner thereof. A copy of the copyrighted pamphlet or sheets, being exhibit A attached to the bill, consists of three printed pages. It does no more than describe the so-called plan or system, which we have summarized supra. An additional exhibit to the bill with the heading "Bank Night Instructions", consisting of two pages, has printed on it, "Copyrighted by Affiliated Enterprises, Inc., 1934." It consists of further description of the plan or system and how it may be carried out, including minute details of the drawing and payment of the amount of the prize advertised, and as if from over-caution and apprehension it repeats: "All persons must be allowed to register without payment of an admission fee."

Assuming the copyrighted matter to be within Constitutional purpose (article 1, § 8, Fed.Const.) and also within statutory requirements (sections 4 and 5, title 17, U.S.C.A.), there are no allegations of fact showing infringement of the copyright. Defendant did not reprint, publish, copy or vend the claimed copyrighted matter, so far as the bill shows. The complaint is that he used the plan and system at his theatre in Oklahoma for the giving away of money prizes by lot or chance. The plan or system is not covered by plaintiff's copyright and could not be. In Baker v. Selden, 101 U.S. 99, 104, 25 L. Ed. 841, the court said:

"Now, whilst no one has a right to print or publish his book, or any material part thereof, as a book intended to convey instruction in the art, any person may practice and use the art itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it."

See, also, Brief English Systems, Inc., v. Owen (C.C.A.) 48 F.(2d) 555; Burk v. Johnson (C.C.A.) 146 F. 209, 213; Amberg, etc., Co. v. Shea Smith & Co.

(C.C.A.) 82 F. 314; Taylor v. Commissioner (C.C.A.) 51 F.(2d) 915; Kaeser & Blair v. Merchants' Ass'n (C.C.A.) 64 F. (2d) 575.

██ Plaintiff in support of its claimed property rights in said plan and system alleges that its said plan and system is designated and known as "Bank Night"; that prior to the filing of its bill it made application to the Secretary of State of the state of Oklahoma for registration and recording of the words "Bank Night" as its trade-mark and form of advertisement of its said plan and system for the purpose of obtaining and did obtain the right to said words as its trade-mark, and the words constitute a trade-mark, and plaintiff acquired the right to the exclusive use of such trade-mark in advertising its said plan and system, especially in the state of Oklahoma. As to this, we think it sufficient to say that our examination of the statutes of Oklahoma discloses no authority for the registration and recording of a trade-mark for the purposes here claimed. The Oklahoma Statutes of 1931, vol. 2, in its 67th chapter entitled Trademarks (section 12779 et seq.) confines the filing of trade-marks to: (1) Manufacturers or dealers in specified goods; (2) Persons or unions that have adopted or used designs of advertisement for the purpose of making known that particular wares or merchandise are the product of such union of workingmen; and (3) Trade-marks to be used on containers of dairy products.

Similarly the acts of Congress on the subject (15 U.S.C.A. § 81 et seq.) restrict the use of trade-marks to merchandise and provide that they be affixed thereto. We fail to find legislative provision or judicial approval and sanction of the use of trade-marks with a plan or system of action. The pleader realized his dilemma. It is alleged:

"it has secured a property right and interest therein and the sole right to use said name as a trade-mark; and that said name has become attached to this plaintiff and becomes a designation of this plan throughout the United States and the State of Oklahoma, and is known in every state and community as belonging to and designating this plaintiff and the exclusive property of the plaintiff herein.

"That the plaintiff in the use of the name 'Bank Night' has acquired a valuable reputation and good name, and enjoys the good will connected with the use of said trade-mark in the business of licensing the plan designated thereby.

"That the plaintiff, as sole and exclusive owner of 'Bank Night' and the good will appurtenant thereto, and being desirous of licensing the plan designated thereby to all possible users in all parts of the United States, has organized and established a nationwide organization for the sole purpose of advertising and licensing the said plan and use of the trade-mark 'Bank Night'; and large sums of money have been expended in behalf of such organizing and advertising."

This is a bold claim to a right in gross or at large in a trade-mark. There is no such right. United Drug Co. v. Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; In re Leslie-Judge Co. (C.C.A.) 272 F. 886. We fail to see that the claimed copyright or trade-mark in anywise supports the bill.

██ The plan or system portrayed in the copyrighted sheets discloses more than once that an admission charge must not be exacted as a condition entitling one to participate in the drawing. Everyone, if he holds or does not hold or buys or does not buy a paid admission ticket to the show, is entitled to register at the entrance or in the lobby of the theatre, and he is thereupon designated by number opposite his name and must be permitted to have an equal chance with every other registrant in drawing the prize. This seems to be a subterfuge to escape the stigma of being a lottery. It is apparent that no one would give prizes if all participants in the drawings paid no admission fees. Show places are conducted for profit. The plan would be wholly worthless as a money making scheme, both to lessor and lessee. It is further apparent that when non-paying participants and those who pay admissions are each given the same chance at drawing the prize the lucky number may represent one who paid to get in only because of his interest in the drawing. Indeed, that is more than probable. Then how can it be maintained that the supposed evasion converted a lottery or gambling device into a mere altruistic opportunity and occasion to bestow a gift. If not within the literal definitions of those vices, plaintiff's plan and system is too closely akin to have the protection and assistance of a court of equity.

The order appealed from is affirmed.