**LONE RANGER, Inc., v. COX et al.**
**C. A. No. 162.**

District Court, W. D. South Carolina.

June 26, 1941.

Price & Poag, of Greenville, S. C., for plaintiff.

Wyche, Burgess & Wofford, of Greenville, S. C., for defendants.

WYCHE, District Judge.

The matter before me in this case is a suit in equity whereby the plaintiff seeks to enjoin the defendants from infringements of certain copyrights, from interference by the defendants with plaintiff's alleged exclusive rights to certain trademarks and trade-names, and from unfair competition with the plaintiff's business.

The plaintiff in its complaint alleges that the president of its company conceived the idea of a radio dramatic adventure serial, which was conceived and developed on a high moral plane, appealing to children and entitled "The Lone Ranger". The principal character was named The Lone Ranger, being a mysterious character who attempted to right the wrongs of the West, and whose real identity as such has naturally never been revealed to the public. He was supposed to ride a white horse named Silver, and uses the lines "Hi-Yo Silver" and "Hi-Yo Silver, Away". This radio dramatic serial was copyrighted by the plaintiff and has been broadcast over the radio through a number of stations to the general public, and as such broadcasts are made they are sponsored by manufacturers licensed by the plaintiff. Plaintiff also owns a copyright to the comic strip entitled "The Lone Ranger" which is now being published under license from it by a number of newspapers. Plaintiff claiming exclusive right to the trade-mark or trade-name, "The Lone Ranger" has licensed a large number of manufacturers to produce articles using the name "The Lone Ranger" as a mark thereon, and during the past several years it has organized a safety club for children known as "The Lone Ranger Safety Club".

In June, 1937, plaintiff by license to Republic Productions, Inc., granted it the right to manufacture, produce, and distribute the talking motion picture serial of "The Lone Ranger". This was produced under the title of "The Lone Ranger" in fifteen episodes. This picture proved such a success that Republic Productions, Inc., cut the fifteen episodes, inserted a few new scenes and issued the same picture under the title, "Hi-Yo Silver", using the same scenes and actors as originally appeared in "The Lone Ranger" serial. This picture was produced and shown to the general public in April, 1940. The leading character in both pictures was Allen King, who was disclosed unmasked at the end of the picture as "The Lone Ranger". Lee Powell, an actor, and one of the defendants herein, was selected and actually played the part of "The Lone Ranger" in both pictures, though when the "Hi-Yo Silver" picture was made, he did no new acting, the scenes used being taken from the original "The Lone Ranger" picture.

Since the production and exhibition of the two pictures aforesaid, the defendant, Lee Powell, has been employed by the defendant, O. C. Cox, doing business as Wallace Brothers Circus. Lee Powell has appeared personally in the circus before the general public and has advertised himself as Lee Powell, the original Lone Ranger of talking pictures. When the defendant, Lee Powell, appeared under the auspices of O. C. Cox, doing business as Wallace Brothers Circus, he rode a white horse as he had in his pictures and used the expression, "Hi-Yo Silver". The picture of Lee Powell on a white horse was used in newspapers and posters advertising Wallace Brothers Circus and the words, "Lee Powell, the Original Lone Ranger of Talking Pictures" and "Hi-Yo Silver" were also used.

The plaintiff contends that the defendant Lee Powell's advertisements and personal appearances in the Wallace Brothers Circus, as "Lee Powell, the Original Lone Ranger of Talking Pictures," infringes their copyright to the radio dramatic serial as set forth in its complaint. No contention is made that he has infringed its copyrighted comic strip entitled "The Lone Ranger", which has been published under license by numbers of newspapers. The plaintiff asks for an order restraining and enjoining the defendants from advertising Lee Powell as the original Lone Ranger of talking pictures, from appearing before the public as such, and from using the expression, "Hi-Yo Silver" upon the following three grounds: (1) That the defendants are infringing upon the copyrights of the plaintiff; (2) that the defendants are unlawfully interfering with the exclusive right of plaintiff to certain trademarks and trade-names; and (3) that defendants are engaging in unfair competition with the plaintiff.

No copy of the copyright of the radio dramatic serial known as "The Lone Ranger" was attached to the complaint and no evidence was offered to prove the expression of the idea so copyrighted and known as "The Lone Ranger". Copyrighted property under the federal law is purely a creature of statute and the copyright statutes as they now exist create a new right and do not extend or contain any right theretofore existing. Copyright statutes when so complied with and a copyright issued thereunder create a monopoly in the owner of the copyright to print, publish, and perform for profit the work of art or literature for which the copyright is given.

When a work of art or literature has been copyrighted, the owner is protected only in his method of expression of the idea contained in his copyrighted work and not protected in the use of the idea itself. Nichols v. Universal Pictures Corp., 2 Cir., 45 F.2d 119. Nor does the copyright of any work of art or literature protect the owner of the same from the use by others of the title to his work. The title to the copyrighted work may be used by others even to the extent of applying it to similar works of art or literature so long as the author's expression of his idea is not copied or paraphrased. Atlas Mfg. Co. v. Street & Smith, 204 F. 398, 47 L.R.A.,N.S., 1002, appeal dismissed, 231 U.S. 348, 34 S.Ct. 73, 58 L.Ed. 262. The owner of a thing copyrighted acquires through the copyright no property in the name by which it is designated and a copyright of a play, or as in this case, a dramatic serial does not carry with it exclusive right to the use of the title. Warner Bros. Pictures. v. Majestic Pictures, 2 Cir., 70 F.2d 310: So the title of the plaintiff's radio dramatic script "The Lone Ranger" is afforded no protection as such by the copyright statute. 17 U.S.C.A. §§ 1, 3.

Nor is the idea itself which is inserted in the copyrighted work protected by the copyright, but merely the author's

490

expression of his idea is so protected. Guthrie v. Curlett, 2 Cir., 36 F.2d 694; Dymow v. Bolton, 2 Cir., 11 F.2d 690. In order for there to be any infringement of the plaintiff's copyright, it must be shown that there has been copied from the plaintiff's copyrighted works some substantial and material part of that to which the statute affords protection. Neither is the plaintiff entitled under its copyright to a monopoly of a mere character as such. In the case of Nichols v. Universal Pictures, Corp., supra, 45 F.2d at page 121, the court says: "If Twelfth Night were copyrighted, it is quite possible that a second comer might so closely imitate Sir Toby Belch or Malvolio as to infringe, but it would not be enough that for one of his characters he cast a riotous knight who kept wassail to the discomfort of the household, or a vain and foppish steward who became amorous of his mistress. These would be no more than Shakespeare's 'ideas' in the play, as little capable of monopoly as Einstein's Doctrine of Relativity, or Darwin's theory of the Origin of Species. It follows that the less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly."

The plaintiff, in order to recover for an infringement of his copyright, must show more, by the allegations of his complaint and the evidence offered in proof thereof, than the mere fact that a copyright in its favor exists covering a radio dramatic serial entitled "The Lone Ranger" with a general description of a principal character and the idea expressed therein. It must show, both by allegation and proof, the author's expression of his idea as covered by the copyright and that the defendant appropriated a substantial portion of the copyrighted matter so that it definitely appears that the work of the author has been made use of. The appropriation by the defendant of the title as such or of the idea does not of itself constitute an infringement of the plaintiff's copyright.

In the case of Affiliated Enterprises, Inc. v. Gantz, 10 Cir., 86 F.2d 597, 598, the court says: "Assuming the copyrighted matter to be within Constitutional purpose (article 1, § 8, Fed.Const.) and also within statutory requirements (sections 4 and 5, title 17, U.S.C.A.), there are no allegations of fact showing infringement of the copyright. Defendant did not reprint, publish, copy or vend the claimed copyrighted matter, so far as the bill shows. The complaint is that he used the plan and system at his theatre in Oklahoma for the giving away of money prizes by lot or chance. The plan or system is not covered by plaintiff's copyright and could not be. In Baker v. Selden, 101 U.S. 99, 104, 25 L.Ed 841, the court said: 'Now, whilst no one has a right to print or publish his book, or any material part thereof, as a book intended to convey instruction in the art, any person may practice and use the art itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it.' See, also, Brief English Systems, Inc. v. Owen [2 Cir.] 48 F.(2d) 555; Burk v. Johnson [8 Cir.] 146 F. 209, 213; Amberg [File & Index] Co. v. Shea Smith & Co. [7 Cir.] 82 F. 314; Taylor v. Commissioner [3 Cir.] 51 F.(2d) 915; Kaeser & Blair v. Merchants' Ass'n. [6 Cir.] 64 F.(2d) 575."

Applying the foregoing decisions to the facts in this case, I can find no acts of the defendants which could be construed as an infringement of the plaintiff's copyright.

The plaintiff in support of its alleged property rights in radio dramatic serial "The Lone Ranger" alleges in its complaint that it has registered the words "The Lone Ranger" as its trade-mark and form of advertisement of its radio dramatic serial and its comic strip, and that it has licensed the trade-mark to a number of separate and distinct manufacturers allowing them to affix the so-called trade-mark "The Lone Ranger" to various and sundry articles of merchandise. Thus the plaintiff attempts to claim an exclusive right to the trade-mark "The Lone Ranger", claiming a right in gross to such trade-mark. This the plaintiff has no right to do. There is no right in gross or at large in a trade-mark. In the case of Affiliated Enterprises v. Gantz, supra, the plaintiff therein attempted to claim a registered trade-mark to a plan or scheme called "bank night", claiming to have exclusive right to the use of such trade-mark in connection with its business of giving away money by chance to patrons of theatres. The plaintiff therein had instructions describing the plan or system and the manner in which it was to be used, printed, and copyrighted, and also claimed to have registered the two words "bank night" as its trade-mark and that it had the exclusive

right to the use of such in the connection with the sale of its copyrighted subject matter. The court, however, at page 599 of 86 F.2d says: "This is a bold claim to a right in gross or at large in a trade-mark. There is no such right. United Drug Company v. Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141."

A trade-mark is nothing more or less than a mark or symbol used by one who manufactures or sells goods to distinguish them from similar goods manufactured and sold by others. A trade-mark merely distinguishes and designates the business in which it is used and it is the business which is to be protected and not the trade-mark as a mere group of words or symbols. A trade-mark is not a right in gross and is not the subject of property except in connection with an existing business for there is no right in a trade-mark apart from the business or trade in connection with which it is employed. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Vermont Maple Syrup Co. v. F. N. Johnson Maple Syrup Co., D.C., 272 F. 478.

A trade-mark right is not a right in gross or at large like a statutory copyright or a patent for an invention, the law of trade-mark being but a part of the broader law of unfair competition. The right to a particular mark grows out of its use in trade, in its mere adoption, and the owner of a trade-mark may not, like the proprietor of a patented invention or a copyrighted piece of art or literature, make a negative and merely prohibitive use of it as a monopoly. United Drug Co. v. Rectanus Co. supra.

The registration of the plaintiff's so-called trade-mark "The Lone Ranger" created no new rights in the plaintiff so far as this case is concerned which did not exist prior to such registration, except the procedural advantage of proving the same. While it is true that a trade-mark may be assigned or licensed when such is done in connection with the existing business with which it has become associated, such cannot be assigned or licensed except in connection with such business. In re Leslie-Judge Co., 2 Cir., 272 F. 886, certiorari denied; Green v. Felder, 256 U.S. 704, 41 S.Ct. 625, 65 L.Ed. 1180. The plaintiff in the instant case alleges that it has licensed its so-called trade-mark to a number of independent manufacturers of numerous articles of merchandise. This the plaintiff has no legal right to do to the exclusion of other people who desire to affix the name "The Lone Ranger" to any other article of merchandise not sold in competition with plaintiff's goods.

The plaintiff contends, however, that the title "The Lone Ranger" as used in connection with its dramatic radio script has become its trade-name and that the defendants by using the same are engaged in unfair competition with it. Assuming that the plaintiff has for many years built up and acquired valuable property rights under the trade-name of "The Lone Ranger," and that such is not subject to registry under the federal statute as a trade-mark in connection with its radio broadcast, the only question here involved is, Have the defendants by their acts interfered with the plaintiff's exclusive right to the use of the trade name "The Lone Ranger" in connection with its radio program?

The gist of the charge of unfair competition is a palming off or passing off of the goods, wares, or merchandise of the defendants as those of the plaintiff with a fraudulent intent, and resulting deceit to the public and damages to the plaintiff. The wrong in unfair competition consists in the sale of goods of one producer as those of another and the use of some trade-mark or trade-name as distinguishing feature of such goods. Nothing less than conduct tending to pass off one man's merchandise, or, as in the instant case, entertainment, as that of another, could constitute unfair competition.

Here the defendant, Lee Powell, by advertisements and personal appearances in Wallace Brothers Circus, held himself out to be the original Lone Ranger of talking pictures and used the expression "Hi-Yo Silver". This was nothing more than the truth. He is the person who originally played the part of The Lone Ranger in two talking pictures, "The Lone Ranger" and "Hi-Yo Silver". In so doing, he was employed by the Republic Productions, Inc., as an actor to play these parts and in both pictures, testimony shows he rode a white horse named Silver, while masked as The Lone Ranger and used the expression "Hi-Yo Silver". The Republic Productions, Inc., produced and distributed these two pictures under a license from the plaintiff of its copyrighted radio script which gave the Republic Productions, Inc., an exclusive right to produce and dis-

tribute talking motion pictures of "The Lone Ranger". The plaintiff could very easily have protected whatever right it might have had by requiring the Republic Productions, Inc., as a condition precedent to the exercise of its license, to have the defendant, Lee Powell, sign a contract or a release agreeing not to use at any time in personal appearances or otherwise any reference to the fact that he played the part of The Lone Ranger in these two talking pictures. This the plaintiff did not see fit to do and having licensed the Republic Productions, Inc., with the exclusive right to produce and distribute talking motion pictures have lost their right, if any, to prevent Lee Powell, the actor employed by Republic Productions, Inc., from referring in his personal appearances and by advertisement to his former employment.

The defendant Lee Powell appears in person in his performances. He has clearly stated, both in his advertisements and otherwise, that he is the original Lone Ranger of Talking Pictures and has at no time referred to or attempted to refer to anything which would lead the public to believe that he was The Lone Ranger of radio fame. He has in no manner attempted to compete with the plaintiff or to palm off any goods, merchandise, or entertainment of his own as being that of the plaintiff.

The plaintiff did not produce any competent evidence to show that the defendants were misleading the public. The only evidence introduced was certain hearsay statements made in the deposition of Raymond J. Meurer and the opinion of D. D. Connah, advertising executive, who was called as an expert witness and gave his opinion about the matter. Both of these witnesses' testimony was inadmissible in evidence for obvious reasons. The only other witness offered by the plaintiff, Mr. T. Z. Sprott, who was the manager of the American Bakeries Company in Charlotte, North Carolina, who testified in substance that he was the manager of the American Bakeries Company of Charlotte, North Carolina; that he had control of a radius of approximately sixty or seventy miles around Charlotte; that he had seen the advertisements and posters advertising Wallace Brothers Circus and Lee Powell, the original Lone Ranger of talking pictures. He admitted that he knew nothing about what happened in the picture or

in the circus except through hearsay. He stated that after seeing the posters he saw that someone else was using the name "The Lone Ranger" which he thought he had an exclusive right to do, having purchased the same from the plaintiff, and that believing someone was encroaching on his territory, he complained to the company. The mere fact that Mr. Sprott, as manager of the American Bakeries Company, and Mr. Connah, as an advertising executive, did not like what the defendants were doing is not sufficient proof of the defendants' conduct as to entitle the plaintiff under its complaint to the relief against the defendants for engaging in unfair competition. For equity gives relief in such cases only where it clearly appears that one man is selling or offering for sale his goods representing them to be goods of another trader in the same commodity, or under such conditions and circumstances as would lead the public to believe they were the goods of another. These facts do not appear in the instant case. The law is clear upon the subject, the only difficulty arising is its application to a given state of facts.

The plaintiff relies especially upon two cases to sustain it in this cause, General Shoe Corp. v. Rosen, 4 Cir., 111 F.2d 95, and Little Tavern Shops v. Davis, 4 Cir., 116 F.2d 903. The general propositions of law in these two cases are clear, but I do not consider them applicable to the facts as alleged and proved in the instant case.

In each of these cases, the defendant was engaged in actual competition with the plaintiff both as to geographical location and type of goods sold. In the case of General Shoe Corp. v. Rosen, supra, the plaintiff manufactured and sold shoes which had been extensively advertised at great expense under the registered trademark and trade-name "The Friendly Five". The defendant a number of years later opened up a men's store under the name of "Friendly Men's Shop" which he had registered under the West Virginia trademark statutes as his trade-mark. Thereafter the defendant opened up several shops under his trade-name and among other articles of merchandise sold therein were shoes. The defendant displayed in its window the word "Friendly" in advertising its shoes; stamped the word "Friendly" on the soles of the shoes so advertised; and wrapped the shoes in a box bearing the label "Friendly" conspicuously displayed in a color similar to the colors

theretofore used by the plaintiff. Under these circumstances, the court found as a fact that, regardless of the intention of the defendant, the acts so committed were manifestly such as would tend to mislead the public into believing that the shoes sold by the defendant were produced by the plaintiff. This was nothing more than a standard case of passing off the goods of one for the goods of another in which our courts have always granted relief. The defendant was enjoined from using the word "Friendly" with respect to the display or sale of shoes in such a way as would be likely to confuse the public, but the court refused to enjoin defendant from the use of the word "Friendly" in the name, "Friendly Men's Shop" as the appellation of his business. Speaking through Judge Soper at page 99 of 111 F. 2d the court says: "There are well considered cases which hold that a manufacturer may not adopt, as part of the name of his business, the established trade mark of another, if thereby the public would be led to believe that the goods made by the former were produced by the latter. Vogue Co. v. Thompson Hudson Co., 6 Cir., 300 F. 509; Yale & Towne Mfg. Co. v. Haber, D.C., 7 F.Supp. 791; Wall v. Rolls Royce of America, 3 Cir., 4 F.2d 333; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774, and Mantle Lamp Co. v. Aladdin Mfg. Co., 7 Cir., 78 F.2d 426. But the rule does not permit one who has adopted a common word to indicate a product of his manufacture, so to monopolize the term as to exclude others from using it in any kind of business. See Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962. The property which the plaintiff has acquired in the word 'Friendly' extends only to its use in relation to shoes, and the defendant did not trespass upon forbidden territory by incorporating the word within the name of his places of business. His offense consists in so using and displaying it in the shoe department of his establishments as to lead the public to suppose that his shoes came from the plaintiff's factory."

The plaintiff petitioned the court for a rehearing asking for enlarged injunctive relief against the defendant, but this was denied. General Shoe Corp. v. Rosen, 4 Cir., 112 F.2d 561.

In the case, Little Tavern Shops v. Davis, supra, the same situation exists. The defendant therein was engaged in actual competition both as to geographical location and type of goods sold. The acts of the defendant in advertising its goods and place of business were such as would tend to mislead the general public and by uncontradicted and competent evidence the plaintiff proved that the public was actually misled. This again is a standard "passing-off" case for which relief has always been given.

In the instant case, from the evidence before me, I cannot find any acts of the defendants complained of by the plaintiff which would tend to confuse, mislead, or deceive the public into believing that the goods offered by the defendants were those of the plaintiff. The plaintiff has failed to prove by any competent testimony that the defendants are in any way competing with the plaintiff in the sale of its goods or entertainment to the general public and assuming that such competition does exist, they have failed to go further and prove by any competent testimony that such competition on the part of the defendants is unfair. There is no competent evidence to show that the public or any member thereof has been misled by any statement made by the defendants, either in personal appearances or by advertisement.

The defendant, Lee Powell, having been employed as an actor by the Republic Productions, Inc., has a right to refer by advertisement, statement, or otherwise, to his former employment, to his association with Republic Productions, Inc., and to the part he played in the pictures "The Lone Ranger" and "Hi-Yo Silver," and a suit for injunction will not lie where he does nothing more than refer to his former employment as has been shown in the instant case.

In 32 Corpus Juris, 161, section 218, is found the following statement: "One who has formerly been associated in business with another as partner or as employee may on setting up a separate business for himself make a public announcement of the fact by putting up a sign so stating on his shop front, and an injunction will not lie to restrain him from so doing. However, he will be restrained from doing this in a manner calculated to lead to the belief that he is carrying on the business of the old firm."

The reason for this rule has been stated in the case of Van Wyck v. Horowitz, 39 Hun, N.Y., 237, 238: "There is not the

least fraud on the public and not the least injury to the [former partner or employer]."

Certainly the plaintiff in the instant case would not have the legal right to complain of the defendant, Lee Powell, referring to his former employment and work with the Republic Productions, Inc. In the first place, the defendant, Lee Powell, has the legal right to refer to such former employment and employer. And, in the second place, the only person who could complain would be the Republic Productions, Inc., and its only complaint would be, not that Lee Powell would not have the right to refer to his former employment with it, but that he in so referring by advertisements and otherwise was attempting to lead the public to believe that he was carrying on the business of the Republic Productions, Inc. However, the Republic Productions, Inc., is not a party to the proceeding and that question is not before me. The present plaintiff, in my opinion, has no legal or equitable right to restrain the defendant, Lee Powell, from referring to his former employment and employer.

On May 3, 1939, the plaintiff herein instituted a similar proceeding against the two defendants in the District Court of the United States for the Middle District of Pennsylvania, which proceeding resulted in a final decree of said court to which both the plaintiff and the defendants personally consented. A copy of this decree was attached to the complaint herein and made a part thereof. The instant case, however, is separate and distinct from the proceeding in Pennsylvania. There was no attempt made in this case, nor has any attempt ever been made so far as is before me to enforce this decree. The only possible connection which this decree could have with the instant case would be as to the admission made by the plaintiff and defendants when they consented personally to the same. However, there is nothing contained in that decree which this court has not already passed upon, with the exception of the use by the defendant, Lee Powell, of the expression "Hi-Yo Silver" in printed advertisement and in his personal appearances.

The District Court of Pennsylvania found as a matter of fact, to which both the plaintiff and defendants consented, that the defendant, Lee Powell, had the right to refer by announcement, advertisement, performance, representation, or publication to the fact of his former employment as The Lone Ranger so long as he did so without leading or attempting to lead the public into believing that he ever played the part of The Lone Ranger on the radio or had participated in said broadcast by the plaintiff or its licensees. The court based this finding upon the fact that Lee Powell or any other person, as has already been stated, has the right to refer to his former employment or employer in establishing his own business. The court, however, in its decree perpetually enjoined the defendants from using the lines "Hi-Yo Silver" or "Hi-Yo Silver, Away".

From the testimony before me, it appears that since April, 1940, the defendants have been using the line "Hi-Yo Silver" in their advertisement of Lee Powell as the original Lone Ranger of talking pictures. However, since the signing of the decree by the District Court of Pennsylvania, a second motion picture has been issued by Republic Productions, Inc., entitled "Hi-Yo Silver" under license from the plaintiff. In this picture, the defendant, Lee Powell, also played the part and did all the acting of The Lone Ranger. If the defendant, Lee Powell, has the right to refer to his former employment in the original "The Lone Ranger" picture, as I have found, as the District Court of Pennsylvania has found, and to which the plaintiff has consented, then by the same token he would have the right now to refer to his former employment by the Republic Productions, Inc., as The Lone Ranger in "Hi-Yo Silver". It appears to me that it is impossible to escape the conclusion that if the defendant, Lee Powell, has a right to refer to his employment in one picture, he has the right to refer to his employment in another picture produced at a date subsequent to the signing of the final decree in the District Court of Pennsylvania.

For the reasons herein assigned, the order of injunction sought by the plaintiff in this suit should be denied.

Counsel may present an appropriate order accordingly.