RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; DESTILERÍA SERRALLÉS, INC., Intervener.

No. 213. Argued May 6, 1949.—Decided July 5, 1949.

*Vicente Géigel Polanco, Attorney General* (*Luis Negrón Fernández,* former *Attorney General,* in the petition and on the brief) and *Edgar S. Belaval,* Special Counsel for the Department of Justice, for petitioner; *Orlando J. Antonsanti* and *Eulogio Riera* for intervener, complainant in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Among other personal property belonging to the domestic corporation Destilería Serrallés, Inc., the Treasurer of Puerto Rico assessed, for the purposes of levying a property tax thereon, certain trade-marks and formulae at $188,000 fixing the value of the former at $185,000 and the latter[1] at $3,000. Feeling aggrieved with the assessment, said corporation resorted to the Tax Court and said court after a hearing on the merits, found that in the absence of better evidence the Treasurer should include among the property assessed, the item of $18,040.73 "as value" of the formulae of the products "Don Q" and "Boca Chica," but emphatically stating that this did not represent the value of any trade-

---

[1] Regarding the value of the formulae there is no controversy, since the taxpayer agreed to the assessment made.

mark, but only the valuation given by the plaintiff in its books to the formulae of said products. To review the decision thus rendered we issued a writ of certiorari.[2]

The contention of the Treasurer of Puerto Rico is that the respondent court erred in holding that trade-marks can not be valued separately to determine the tax on the personal property and in not holding that in the total absence of evidence on the part of the taxpayer to show the true value of said trade-marks, his decision should be upheld.

Section 290 of the Political Code provides in its pertinent part "That all property not expressly exempted from taxation shall be assessed and taxed" and that "Personal property shall include. . . patent rights, *trade-marks*, franchises, concessions. . ." (Italics ours.) Section 291 of that same Code as amended, enumerates in a clear and express manner the property that shall be exempt from taxation. Trade-marks do not appear among them. Section 317 of said Code provides, on the other hand, the manner in which personal property of corporations shall be assessed. This last Section provides in part that "The actual present value of the capital of such corporations shall be ascertained by the Treasurer of Porto Rico from the sworn declarations of the presidents, directors or other chief officers of such corporations as required by § 319 and from such other reliable information as the Treasurer may have or secure, and the present actual value shall in no case be less than the value of the capital stock and bonds of said. . . corporations. . ., *including in personal property rights, franchises and concessions*" and that "From the valuation thus obtained shall be deducted the total valuation of real property of said corporations, as ascertained in accordance with the provisions of section 316, and the remainder shall be deemed to represent the personal property of said corporations for purposes of taxation." (Italics ours.) Therefore, in assessing the per-

---

[2] See § 5 of Act No. 169 of 1943 (Laws of 1943, pp. 600, 610).

sonal property of corporations, the Treasurer of Puerto Rico may do it following one of the two formulae above specified: taking into consideration the actual present value of the capital of such corporations or the market value of the real and personal property, always choosing the method which yields the higher valuation. Cf. *Sucn. Pedro Giusti, Inc.* v. *Tax Court, Buscaglia, Treas., Intervener, ante,* p. 109.

Analyzing the three Sections of the Political Code cited above, we find that by express provision of § 290 all property not expressly exempt from taxation shall be assessed and in addition that trade-marks are specifically considered as personal property; that trade-marks are not included among the property exempt from taxation by § 291 and that in accordance with § 317 among the personal property of corporations to be assessed are included *all "rights,* franchises, and concessions." Tax exemptions should be strictly construed. They can not be inferred; they must be specifically provided for in plain and unambiguous language. *Ochoa Fertilizer* v. *Tax Court,* 68 P.R.R. 394, 399. Since there is no provision which expressly exempts trade-marks, the prima facie presumption is that they should be assessed and that they are subject to the payment of property taxes.

It is well-settled that a trade-mark is but a mere design or symbol used by the manufacturer or seller of goods to distinguish such goods from similar products manufactured or sold by other persons. However, although a trade-mark is a property right it can not be valued as such independently from the business or industry in which it is used. *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403, 60 L. ed. 713; *Trade-Mark Cases,* 100 U. S. 82, 25 L. ed. 550; *American Steel Foundries* v. *Robertson,* 269 U. S. 372, 70 L. ed. 317; *United Drug Co.* v. *Rectanus Co.,* 248 U. S. 90, 63 L. ed. 141; *Ph. Schneider Brewing Co.* v. *Century Distilling Co.,* 107 F. 2d 699; *E. F. Prichard Co.* v. *Consumers Brewing Co.,* 136 F. 2d 512; *Kelly Liquor Co.* v. *National Brokerage Co.,* 102 F.

2d 857; *Lone Ranger, Inc.* v. *Cox*, 39 F. Supp. 487; *American Agr. Chemical Co.* v. *Moore*, 17 Fed. 2d 196, 199; *R. H. Macy & Co.* v. *Macys, Inc.*, 39 Fed. 2d 186, 187; *General Baking Co.* v. *Goldblatt Bros.*, 90 Fed. 2d 241, 242; 52 Am. Jur. 513, § 13. Therefore, since trade-marks are personal property according to § 290 of the Political Code, such trade-marks constituting a property right, and since § 317 of said Code provides that the personal property of the corporation shall include *rights*, franchises, and concessions, it is but logical to reach the conclusion that trade-marks may be assessed for the purposes of imposing property taxes. So we hold.

██ Now then, having reached the above conclusion should we uphold the assessment of appellants' trade-marks made by the Treasurer in this case? We do not think so. Although the presumption in law is that every tax assessment made by the Treasurer is presumed to be correct and that it is incumbent on the taxpayer to overcome such presumption, the assessment made by said officer, however, will be set aside if it is shown that the same is unreasonable, arbitrary, unjust, or discriminatory. See *Buscaglia, Treas.* v. *Tax Court, Sucesores de Abarca, Intervener*, 69 P.R.R. 818.

██ The opinion of the lower court shows that the average net returns obtained by the intervener during the years 1940–1944, amounted to $1,023,877.34. The appraiser of the Treasurer, called to the witness stand by the taxpayer, estimated that 2 per cent of said sum could be attributed to the trade-marks, he capitalized the product obtained at 11 per cent, which resulted in $186,159.52 and fixed $185,000 as assessment of the trade-marks, in order to make it a round number. The plaintiff also used the testimony of their accountant. The Treasurer, however, did not offer any evidence whatsoever. Regarding that point the respondent court expressed itself thus: "To ascertain the average net return of the business during five years, to multiply said average by a coefficient, whichever it may be, and to consider the product obtained as if it were the value of the trade-marks

is a fundamental error and of such a nature that it overcomes the presumption of correctness which, as a matter of law, the determination of the Treasurer has." It concluded as we have stated at the beginning of this opinion, that the Treasurer should include the item of $18,040.73 as valuation given by the plaintiff in its books to the formulae of the products "Don Q" and "Boca Chica". However, said court gave no valuation to the trade-marks in controversy. The fact that the procedure followed by the Treasurer in the assessment of the trade-marks involved in this case, was, in the opinion of the Tax Court, unreasonable, arbitrary, unjust, and discriminatory in nowise means that such trade-marks should not be assessed. *Mayagüez Sugar Co.* v. *Sancho, Treas.*, 64 P.R.R. 699, 701; *Helvering* v. *Taylor*, 293 U. S. 507, 514, 79 L. ed. 623, 629, and cases cited therein. They should be assessed jointly with the properties of the industry or business to which they belong. In so doing, as happens in condemnation proceedings,[3] the court is not bound to follow the assessment fixed by one or the other party, but after weighing the evidence introduced by them [4] it should reach its own conclusions and fix the assessment of the properties of the plaintiff, including the trade-marks in question, in accordance with its own judgment.

The decision appealed from should be reversed and the case remanded to the Tax Court in order that the latter, either on the evidence already introduced or authorizing the parties to introduce new evidence on the matter, fix the value of the properties of the plaintiff together with the trade-marks involved herein.

Mr. Justice Negrón Fernández did not participate herein.

---

[3] See *People* v. *Saldaña*, 69 P.R.R. 663.

[4] The Treasurer is not bound to introduce evidence and may rest on the presumption of correctness which his tax assessment has. If in his judgment that presumption is overcome or destroyed by the taxpayer, there is nothing to prevent him from introducing the evidence he might deem pertinent.