FRANK C. DEERING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.[1]

Docket No. 95996. Promulgated November 29, 1939.

*Percy W. Phillips, Esq.,* for the petitioner.
*Charles P. Reilly, Esq.,* and *James T. Haslam, Esq.,* for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a deficiency of $4,462.66 in petitioner's income tax for 1935. The deficiency, in so far as it is contested, results from the respondent's determination that the petitioner realized a taxable net capital gain of $12,681.03, instead of a deductible net capital loss of $2,430.27 which the petitioner reported in his return, on the transfer of securities and a small amount of cash to his wife and son and daughter in consideration of the promise of each to pay him $8,333.33 annually for life.

The facts are stipulated.

On December 30, 1935, the petitioner, under three separate agreements of substantially similar form, transferred to his wife, his son, and his daughter certain stocks and bonds of a fair market value at the date of the transfer of $235,203.08, which had cost him $245,-334.64, together with $296.92 cash. The fair market value of the stocks and bonds together with the cash given to each was $78,500. Each agreement provided as follows:

This contract is based upon the principal of annuity contracts as issued by the standard insurance companies and use has been made of the approximate figures of such companies pertaining to age of annuitant and prevailing rates for the year 1936, but the contract is accepted as binding in the amount stated even though the rates and payments may vary from the results obtainable from an exact application of the practice and rules of said companies.

In his income tax return for 1935 the petitioner claimed a deduction of $2,430.27 which he computed as follows:

He compared the value, at the time of the transfer, of each of the securities transferred to members of his family under the agreements referred to above with their cost to him and on the basis of that comparison, and the use of the various percentages applicable to the

[1] By order dated November 29, 1939. this caption has been changed to read: "ESTATE OF FRANK C. DEERING, DECEASED, JOSEPH GODFREY DEERING AND YORK NATIONAL BANK, EXECUTORS. PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT."

periods for which the securities had been held, computed aggregate gains of $12,681.03 and aggregate losses of $15,111.30, or a net loss of $2,430.27.

In his determination of the deficiency herein the respondent disallowed the deduction of the $15,111.30 under the provisions of section 24 (a) (6) of the Revenue Act of 1934, but determined that the amount of $12,681.03 was taxable gain to the petitioner.

The parties have stipulated that if the Board should find that the actions of the Commissioner as set forth above are in accordance with the provisions of the applicable revenue act it may enter its order of a deficiency for the year 1935 in the amount of $4,462.66; that if the Board should find that the petitioner sustained neither a taxable gain nor a deductible loss on the transactions it may enter its order under Rule 50 in accordance with such finding; and that if the Board should find that the petitioner sustained a deductible net loss of $2,430.27 on the transactions it may enter its order of no deficiency for the year 1935.

The petitioner now concedes that the loss deduction of $2,430.27 which he claimed in his return for 1935 is not allowable, but he contends that the transfers in question did not result in either a deductible loss or a taxable gain. His contentions are, first, that the exchange of the securities for an annuity contract was not a closed transaction giving rise to either a gain or loss and, second, that if it was, the transaction as a whole did not result in any taxable gain.

The respondent contends, on the other hand, that the transactions resulted in gains on some of the securities and losses on others, which, he submits, were correctly computed by the petitioner in his income tax return, but that the losses are nondeductible under the provisions of section 24 (a) (6) of the Revenue Act of 1934, which prohibits loss deductions on certain transactions between members of a family, and that the gains are taxable under the general provisions of section 22.

We are of the opinion that petitioner's first contention is sound and that no gain or loss resulted from the transactions in question.

Petitioner received nothing in exchange for the securities and cash but the unsecured promises of his wife, son, and daughter to pay him certain amounts annually for life. There was no assurance that he would ever get back the full value or cost of the securities, even should he exceed his life expectancy, since the payments were dependent upon the ability of the contracting parties to meet their obligations under the agreements as they became due.

The instant case is hardly distinguishable from *J. Darsie Lloyd*, 33 B. T. A. 903. There the taxpayer in 1930 transferred to his son,

Harold C. Lloyd, 2,499 shares of Harold Lloyd Corporation stock having a cost basis of $122,567.68, in consideration for the promise of the son to pay him $100,000 annually so long as both parties should live, and, should the son predecease the father, $50,000 annually for the balance of his, the father's life. We held that since the payments received by the father in 1930, amounting to $75,000, were not in excess of the cost to him of the securities transferred in exchange for the annuity contract and since the annuity contract itself, that is, the promise of the son to make the annual payments, had no fair market value at the date of the transfer, the taxpayer received no taxable gain in 1930. We said in our opinion that:

* * * Where marketable exchangeable promises to pay are accepted as a part of a purchase price, their fair market value is included in the "amount realized" and a taxable gain is realized immediately. Cf. *Ruth Iron Co.*, 4 B. T. A. 1151; affd., 26 Fed. (2d) 30; and *Kosmerl* v. *Commissioner*, 25 Fed. (2d) 87. But promises to make future payments do not always have an exchangeable value (*Eisner* v. *Macomber*, 252 U. S. 189) and are not always income when received. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622; *Dudley T. Humphrey*, 32 B. T. A. 280. In such cases the actual payments as made are taxed as income when received in excess of the basis. * * *

In finding that the annuity contract involved in that case had no fair market value, we pointed out that the obligor was not "a sound insurance company" but was an individual who was not engaged in granting annuities and whose ability to meet his future obligations under the contract was not in any way assured.

Although the facts stipulated in this case do not show the financial responsibility of the wife, the son, and the daughter to pay the annuities contracted to be paid, and although there is no evidence that the contracts did not have a fair market value, we think that the evidence warrants the conclusion that they did not have. As in the *Lloyd* case, the obligors were not "a sound insurance company." In the determination of the deficiency the respondent assumed that the contracts had a total fair market value of $235,500. There is no evidence to support such valuation and it is inconceivable that they had anything like that valuation.

In *Burnet* v. *Logan*, 283 U. S. 404, the Supreme Court held that, where a woman transferred property in consideration of an agreement for the payment to her of cash and royalties over a period of years, based upon the number of tons of ore mined each year, she was not liable to income tax upon moneys received by her until she had recovered her cost basis. The Court observed:

* * * The promise was in no proper sense equivalent to cash. It had no ascertainable fair market value. The transaction was not a closed one. Respondent [taxpayer] might never recoup her capital investment from payments only conditionally promised. * * *

In *Evans* v. *Rothensies* (U. S. Dist. Ct., E. Dist. Pa.), —— Fed. Supp. ——, decided July 25, 1939, the court held that no deductible loss resulted from the transfer of securities, which had a cost basis considerably in excess of their fair market value at the time of the transfer, in exchange for an annuity contract. The court observed that "the converse of the present case was presented to the Board of Tax Appeals in *Lloyd* v. *Commissioner*, 33 B. T. A. 903." See also *F. A. Gillespie*, 38 B. T. A. 673.

In his determination of a capital gain in this case the respondent would treat the transactions by which the petitioner acquired the annuities in exchange for property as being a separate sale at the stipulated fair market value of the securities on December 30, 1935, of each lot of stock or bonds transferred to the wife, son, and daughter. It is only in this manner that a capital gain can be found to have resulted. We do not think that this premise is warranted. The petitioner transferred for the annuity in each case securities which cost him more than their fair market value on the date of the transfer and we do not think that the transactions may be resolved into their component parts, as has been done by the respondent in this case. In *First National Bank et al., Executors*, 34 B. T. A. 631, this Board said:

In *First Seattle Dexter Horton National Bank* v. *Commissioner*, 77 Fed. (2d) 45, the general rule was stated from 13 C. J. 561, § 525, to the effect that "a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common to the other and interdependent." * * *

We think that this rule of law is applicable to the proceeding at bar.

It should be noted that all of the transactions which the respondent claims gave rise to taxable income in 1935 happened on December 30, 1935. During 1935 the petitioner received no money under the annuity contracts. He merely purchased annuity contracts in 1935 and those annuity contracts, as we have found above, had no determinable fair market value in that year. It is rare, indeed, that a taxpayer derives taxable income from the purchase of an annuity. We hold that the petitioner has no tax liability for 1935 under section 22 (b) (2) of the Revenue Act of 1934.

*Decision will be entered under Rule 50.*