## CASSATT v. COMMISSIONER OF INTERNAL REVENUE.

No. 8191.

Circuit Court of Appeals, Third Circuit.

Argued March 18, 1943.

Decided Aug. 23, 1943.

Thomas Reath, of Philadelphia, Pa. (Calvin H. Rankin and Frederick E. S. Morrison, both of Philadelphia, Pa., on the brief), for petitioner.

Willard H. Pedrick, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

This is a petition by Alexander J. Cassatt to review a decision of the Board of Tax Appeals sustaining a deficiency in income tax for the year 1936 determined against him by the Commissioner. The relevant facts as found by the Board may be summarized as follows:

The taxpayer was a member of Cassatt and Company, a limited partnership, which for many years prior to 1935 engaged in the stock brokerage business in New York and Philadelphia. The firm had twelve general and two limited partners. Because of the impairment of its capital through losses it was decided in 1934 to liquidate Cassatt and Company. It had a large clientele—some 9,513 stock exchange customers were on the books on January 14, 1935. Pursuant to the decision to liquidate, Cassatt and Company on January 2, 1935, entered into a contract with E. A. Pierce and Company, another stock brokerage house, undertaking to attempt to transfer

its customers to the latter. In return Pierce undertook to pay to Cassatt and Company for a six-years' period 25% of the commissions received on sales of securities to former Cassatt customers. Payments, however, were contingent under the terms of the agreement on (1) Pierce's continuation in the brokerage business and continued handling of the Cassatt accounts, neither of which it was obligated to do, (2) Cassatt and Company's abstinence from re-entry into the brokerage business, and (3) compliance with rules of the security exchanges, notably those prohibiting payment of brokerage commissions to non-members of the exchange.

Pursuant to this agreement Cassatt and Company, on or about January 15, 1935, transferred its customers' accounts to Pierce and the latter retained about 95% of these customers for the six-years' period covered by the agreement. Commissions paid to Cassatt and Company under the agreement amounted to $78,706.93 in 1936.

In the early part of January, 1935, Cassatt and Company was obligated on several leases of office space for terms not expiring until 1941. The aggregate prospective rentals for these leases was $1,076,000. A settlement was effected with the various landlords whereby for $346,524.06 the leases were cancelled for the unexpired terms. Of this sum all but $121,575 was paid in January, 1935. The balance was payable before January 15, 1941.

In connection with the proposed liquidation Cassatt and Company borrowed some $160,000 from two banks. By the terms of the loan agreement the Pierce contract was assigned to a trustee who received the commissions paid thereunder charged with a duty to apply them (1) to the expenses of Cassatt and Company during the period of its liquidation not exceeding $7,500 per annum, (2) to repayment of the bank loans, (3) to payment of the balance of $121,575 owed the landlords, (4) to pay taxes, (5) to return the two limited partners' remaining investment, and (6) to pay any balance to Cassatt and Company.

. The books of Cassatt and Company were kept and its income tax returns were filed on an accrual basis. On its return for 1935 the firm reported as income commissions paid under the Pierce contract of $67,133.37. No valuation of the taxpayer's rights under the Pierce contract appeared in gross income. A deduction of $69,583.-30 was taken representing 120/725ths of the aggregate of the cost of terminating the leases, $346,524.06, and $73,875.02, being the unamortized cost of improvements to the leased premises surrendered. This deduction was taken on the theory that these sums of $346,524.06 and $73,875.02 should be amortized over the life of the Pierce contract ending January 15, 1941. In auditing this return the Commissioner increased the deduction of $69,583.30 by the sum of $350,815.78, which was the aggregate of the balance of the unamortized lease improvements and the money settlement with the landlords. The net loss of the firm for 1935 was thus increased to $390,398.03.

In its return for the year 1936 the firm also deducted the sum of $69,583.30, computed in the same manner and on the same theory as was the similar deduction for 1935. In its return for that year the firm likewise included in gross income the amount received in 1936 on the Pierce contract, $78,706.93. That return reflected a loss of $11,055.49.

In its return for the years 1937 to 1940, inclusive, the firm consistently continued to treat its receipts from the Pierce contract and the settlement with the landlords in cancellation of leases as it had in the years 1935 and 1936.

In auditing the 1936 return of the firm in 1938, the Commissioner disallowed the deduction of $69,583.30 because that item, as well as the balance of the cost to partnership of its cancellation of the leases, had been included by him in its return for 1935. By reason of this disallowance and other adjustments not here in question, the Commissioner changed the loss of $11,055.-49, as shown on the return, to a net income of $84,967.96. He included in the gross income of each of the partners for 1936 his respective share of the firm income so computed.

From a deficiency assessment for 1936 of $875.26 so computed against him the taxpayer appealed to the Board of Tax Appeals. The Board, two members dissenting, sustained the Commissioner's action. 47 B.T.A. 400. From that decision the taxpayer has prosecuted this petition for review.

█ The first question for our determination is whether Cassatt and Company, the Commissioner and the Board were correct in including in the firm's income for 1936 the sum of $78,706.93 received by the firm as its share of the commissions earned

by Pierce from business with former Cassatt customers in that year. We think that this sum was income of the firm in 1936 and that it was rightly so treated.

Cassatt and Company kept its books on an accrual basis. But the sum under discussion did not accrue until 1936 because the firm did not become entitled to it until that year. North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197. Although Pierce had promised to pay Cassatt and Company 25% of all commissions received from business done for former Cassatt customers during a period which included 1936, the right of Cassatt and Company to receive a share of these commissions obviously was wholly contingent upon their being earned by Pierce. Not until the business was done by Pierce—and it was under no obligation to do it—could a right to commissions thereon arise.

The taxpayer nevertheless now contends that the Commissioner and the Board erred in treating the sum under discussion as income of the firm in 1936. He says that what really happened was that in 1935 Cassatt and Company exchanged a valuable property right, the good will of its customers, for other property, the contract with Pierce, and that under Sections 111 (a), 111(b) and 112(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, §§ 111 (a, b), 112(a) this was a taxable exchange and a closed transaction in 1935 which resulted in a gain to Cassatt and Company in that year. It follows, he says, that the sum of $78,706.93 received in 1936 was not income but merely a return in part of the value of the Pierce contract.

■■ It may be conceded that the taxpayer's conclusion would be correct if his premise were sound. But we do not think that the 1935 transaction between Cassatt and Company and Pierce was a taxable exchange of property or that it was a closed transaction. It is true that good will may be the subject of exchange. Here, however, Cassatt and Company did not undertake to transfer its good will to Pierce in exchange for property of an ascertainable market value. On the contrary the transfer was made in consideration of Pierce's promise to share with Cassatt and Company for six years in the future any commissions which it might earn during that period from business with Cassatt customers. The receipt of such commissions was wholly contingent upon Pierce's remaining in business

and obtaining business from the former Cassatt customers, neither of which it was under any obligation to do. It is settled that such a promise to make payments in the future "wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty" has no ascertainable fair market value. Burnet v. Logan, 1931, 283 U.S. 404, 413, 51 S.Ct. 550, 552, 75 L.Ed. 1143. We agree with Judge Learned Hand's statement in Bedell v. Commissioner of Internal Revenue, 2 Cir., 1929, 30 F.2d 622, 624, that "it is absurd to speak of a promise to pay a sum in the future as having a 'market value,' fair or unfair. Such rights are sold, if at all, only by seeking out a purchaser and higgling with him on the basis of the particular transaction. Even if we could treat the case as an exchange of property, the profit would be realized only when the promise was performed."

■ The taxpayer urges that the stipulated testimony in the record established that the Pierce contract did have a fair market value of $500,000 and that the Board erred in failing so to find. In this connection it should be noted that the stipulation was that certain named witnesses, if called, would testify as stated therein. Under these circumstances the weight and materiality of the stipulated testimony was for the Board to determine. We think that the Board was justified in regarding this testimony as insufficient to establish the fact contended for. It would seem to be primarily directed to the proposition, wholly irrelevant here, that the Cassatt good will was worth $500,000 to a purchaser rather than to the much more nebulous point at issue, namely, whether the contingent payments to be made by Pierce, if earned in the future, could fairly be commuted in the market place at that or any other figure. In further support of its contention that the Pierce contract had a market value the taxpayer cites Boudreau v. Commissioner of Internal Revenue, 5 Cir., 1943, 134 F.2d 360. That case is clearly distinguishable on its facts, however, and insofar as it failed to apply the rule laid down in Burnet v. Logan, 1931, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143, to which we have referred, it cannot be regarded as persuasive authority here.

■ The second question with which we are confronted in this case is whether the Board erred in refusing to permit Cassatt and Company to deduct in computing its

1936 taxable income any portion of the sum of $346,524.06 which it agreed in 1935 to pay to its landlords for the cancellation in that year of its existing leases and any portion of the sum of $73,875.02, which represented the then remaining unamortized part of the cost of certain improvements which it had previously made to the leased premises. It will be recalled that all but $121,575 of the amount payable for the cancellation of the leases was paid in 1935, the remainder being payable during the ensuing six years. It is the taxpayer's contention that the entire cost of cancelling the leases, as well as the unamortized improvement costs should have been amortized over the period of six years during which payments were expected to be received under the contract with Pierce. We think, however, that the Board rightly held that the whole amounts here in question were deductible in 1935 and in that year only.

It is clear that the obligation of Cassatt and Company to pay the amount exacted for the cancellation of the leases became fixed and certain in 1935, even though payment of a portion of it was deferred. It was, therefore, deductible in that year (American National Co. v. United States, 1927, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946), unless it represented prepayment of an expense which would contribute to the production of income in later years, as for example, a prepayment of rent. Baton Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 1931, 51 F.2d 469. Here, however, the payments were in no sense prepayments of rent for they secured no future tenure from the landlords. On the contrary the consideration for them, the cancellation of the leases, was wholly received by Cassatt and Company in 1935 when possession of the leased premises was given up. The payments were not for the use of property at all and they had no connection with the production of income. They were rather in the nature of damages which had to be paid in order to secure relief from an unprofitable contract. Such payments have been held to be deductible for the year in which they are incurred. Appeal of Denholm & McKay Co., 1925, 2 B.T.A. 444. Compare Taylor v. Commissioner of Internal Revenue, 3 Cir., 1931, 51 F.2d 915, in which this court held that damages received for the cancellation of an installment contract constitute income in the year of cancellation to an accrual basis taxpayer and might not be accrued over the remaining portion of the original term of the contract.

Likewise there is no basis for the taxpayer's contention that the unamortized cost of the improvements to the leased premises should have been further amortized over a period subsequent to the year 1935 when the premises were surrendered. The theory of the amortization of such expenditures is that the improvements which they represent will assist in producing income during the whole term of the lease and that consequently it is fair to charge the expenditures ratably against the income of the whole period of the lease. But when the lease is ended the basis for further amortization of such expenditures is gone and consequently any unamortized portion then remaining must at once be charged off.

The taxpayer, while not seriously controverting the propositions just stated, urges that the Commissioner should have permitted the amortization of the sums here in question over the period of the Pierce contract under the authority given him by Section 43 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 43, in order more clearly to reflect the income of Cassatt and Company. But it appears that the taxpayer did not comply with Article 43-1 of Regulations 86 which implements Section 43 by providing that a taxpayer wishing to take a deduction for a period other than that in which it was paid or accrued shall file his return taking the deduction only for the period when paid or accrued and attach thereto a statement requesting the Commissioner to allocate it to a different period and setting forth the facts upon which he bases his claim for such allocation.[1] This regulation is reasonable and within the Commissioner's authority. Helvering v. Cannon Valley Milling Co., 8 Cir., 1942, 129 F.2d 642. The failure of the taxpayer to comply with it leaves him without standing to invoke the provisions of Section 43. Even if the taxpayer were in a position to seek relief

[1] This provision has been included in the regulations under all the Revenue Acts since the predecessor of Section 43 first appeared in the Revenue Act of 1924. It must, therefore, be regarded as having the force of law. Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S.Ct. 423, 83 L. Ed. 536.

under Section 43, however, we do not think that he has made out a case under that section for he has not shown any necessary connection between the 1935 expense and the 1936 income. But in order to invoke Section 43 it must be made to appear that the expense contributed in some measure to the production of the income from which it is sought to be deducted since otherwise application of the section would permit any loss of one year to be used to offset any gain of a subsequent year. Such a result was clearly not contemplated since it would run counter to the fundamental theory of the revenue acts that income taxation is to be based upon a yearly accounting system. Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Finally it can hardly be argued that a partnership in liquidation is entitled to the special treatment of being taxed only upon the net gain shown upon a consolidation of all of its transactions for the entire period of liquidation. On the contrary it is settled that the taxable income of a partnership in liquidation is to be determined in the same way as in the case of any other partnership, Heiner v. Mellon, 1938, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337.

The decision of the Board of Tax Appeals is affirmed.