ELIZABETH L. BEATTIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7041. Promulgated March 29, 1946.

*Charles F. Schnee, Esq.*, for the petitioner.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge*: This case involves income tax for the calendar year 1941. The Commissioner determined a deficiency of $284.06. The taxpayer contends that there is an overpayment of $175.42. The only issue presented is whether petitioner shall pay income tax upon an annuity received, based upon the total value of property transferred in the acquisition thereof, or whether a part of such value shall be considered a gift.

A part of the facts have been stipulated. We find them to be as stipulated. They may be summarized and additional facts found from other evidence, stated as follows:

Petitioner is a resident of Chagrin Falls, Ohio, and filed her return for the taxable year with the collector of internal revenue for the northern district of Ohio at Cleveland, Ohio.

Petitioner was on January 1, 1927, the wife of Edward Burkett Miller. On that date he was 67 years of age and the petitioner was 45 years of age. On that date they transferred property of a net value of $265,000 to Mount Union College of Alliance, Ohio, and in exchange therefor received a "Survivorship Life Annuity Bond." The bond set forth, *inter alia*, that Edward Burkett Miller, called donor, "has donated and paid" to Mount Union College $265,000 to be used by it in carrying into effect the purposes of its organization as enumerated in its charter, and that during the lifetime of the donor the college would pay him $18,000 per annum as an income on the "principal sum donated," and after the decease of the donor would pay Elizabeth Lewis Miller (now Beattie, the petitioner), called the survivor, during her lifetime, in case she survived the donor, $9,600 per annum. It further set forth that the bond was issued upon the application of the donor and was accepted by the donor with the full understanding that the income should terminate with the death of donor or survivor, and that the principal sum was an absolute gift, subject only to the payments. The bond was issued pursuant to a tentative agreement, or "Memorandum of Agreement," in writing, executed by the petitioner and her husband and Mount Union College, on November 6, 1926, providing, in salient part, that the petitioner and her husband agreed to convey to the college as of January 1, 1927, certain described properties, consisting of real estate, contracts, and mortgages; "in consideration for which conveyances and assignments," the college agreed to execute and deliver to the petitioner and her husband "Survivorship Life Annuity Bond," whereby the college agreed to pay Edward Burkett Miller during his lifetime $1,500 per month, beginning on February 1, 1927, and after his decease to pay the petitioner, in case she survived him, $800 per month during her life.

Mount Union College was on January 1, 1927, and has since been a corporation engaged in the maintenance of a college for purposes, among others, of education, religion, morality, and the fine arts, of receiving, owning, holding and managing properties and funds, and of purchasing and owning real estate necessary to the maintenance and perpetuity of the college, and generally performing all things necessary for the conduct of the college.

The college performed the conditions of the annuity bond by paying

to Miller the stipulated amounts, amounting to $121,500 on September 23, 1933. On that date the college, Miller, and the petitioner entered into a second agreement, upon the execution of which the college issued another "Survivorship Life Annuity Bond" to Miller and the petitioner. The agreement of September 23, 1933, which was in writing, provided, *inter alia*, that in consideration of a transfer of property pursuant to a contract of November 6, 1926, the college had delivered a "Survivorship Life Annuity Bond"; that it was the desire of the parties, upon mutual consideration, to modify such contract, and that it should be modified in that from November 1, 1933, for a period of two years, or until the death of Miller, if it should occur before November 1, 1935, the college would pay Miller $7,200 per annum as an income "on said principal sum donated," and thereafter pay him $9,600 per year on said principal sum donated; that in case the income from the properties should justify an increase after two years, the annuity payments should be increased to $1,000 per month during the lifetime of said Miller; further, that "as a part of the consideration for this contract," Miller and wife should transfer to the college their homestead property in Akron, Ohio, upon which property the college agreed to cancel a $14,000 mortgage dated January 9, 1930, and held by the college, Miller and wife, however, to have the right to occupy the home free of rentals and for such period of time as they might desire, they to keep the property in maintenance and repair. It was provided that the original contract of November 6, 1926, was not modified in any other respect. The "Survivorship Life Annuity Bond," dated September 23, 1933, set forth the donation of $265,000 by Miller and in substance the provisions, above set forth from the "Memorandum of Agreement," of September 23, 1933, together with a provision that the college would pay the petitioner, after the decease of the donor, $6,000 per year during her lifetime, in monthly payments of $500. It was stated that the issuance of the bond superseded an annuity bond issued under date of January 1, 1927.

On September 23, 1933, Edward Burkett Miller was 74 years of age and petitioner was 52 years of age.

Under the modified annuity the college paid Miller up to the date of his death an additional $21,400, making a total of $142,900 paid to him. Since March 26, 1936, the date of the death of Miller, the college has paid the petitioner $500 per month.

Mount Union College had a plan of issuing survivorship life annuity bonds and of receiving property donations in return for which the college paid annuities on a sliding scale, based upon the age of the person receiving it, for life. Roughly, the amount which was paid to an annuitant was an amount equal to 10 percent of the age of the annu-

itant on the amount donated. For instance, if a person was 50 years of age, he would get 5 percent, and if 70 years of age, 7 percent annually of the amount transferred to the college. Mount Union College was one of a number of colleges selling such annuities. They were making a study of the matter and "doing this annuity business in uniform rates." Most educational institutions figured the annuity on a basis which would be, if the annuitant lived the ordinary expectation of life, "according to the tables," a residual of approximately 70 percent of the original amount, which would come to the institution as a gift, and not more than 30 percent of principal would be paid out in annuities. The rate was fixed on the basis of the age and the annuity. The rule as to 70 percent of the total amount donated as a residuum for the college was a general rule for a number of the institutions. They were not compulsory rules, and each institution had its own rules.

Edward Burkett Miller died March 26, 1936. On April 1, 1936, the John Hancock Insurance Co. of Boston, which was in the business of issuing annuity contracts, would have charged $101,046 for a single premium "Life Annuity Without Refund," agreeing to pay $500 per month during the life of a female 54 years of age.

The petitioner in her income tax return for 1941 reported as income $3,975, which was computed on the basis of 3 percent of one-half of the original cost of the annuity contract. The Commissioner determined the deficiency by computing the taxable annuity income at 3 percent of the total cost of the annuity contract, limited, however, to the actual amount received, that is, $6,000. The petitioner, on December 8, 1943, filed her claim for refund and overpayment in the sum of $175.42, in part upon the ground that she erroneously included $3,975 annuity income and claimed, and now claims, that it should have been $2,853.84.

On the above facts, did the Commissioner err in taxing to the petitioner as income the full $6,000 received? The statute to be interpreted, section 22 (b) (2) of the Internal Revenue Code, is set forth in the margin.[1] It is the petitioner's view, in sum, that there was an element of gift in the $265,000 transferred to the college, in that the

---

[1] SEC. 22. GROSS INCOME.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(b) Exclusions from Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) Annuities, etc.

(A) &ast; &ast; &ast; Amounts received as annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. &ast; &ast; &ast;

consideration originally paid, $265,000, less $142,900 received by Miller, or $122,100, exceeds the amount which she would have been required to pay a reputable life insurance company for an annuity contract similar to that under which she received income, and therefore she should be taxed on only 3 percent of the cost of such annuity from a life insurance company; whereas the respondent's position is that 3 percent of the $265,000 consideration is more than the $6,000 received by petitioner in 1941, so that she is taxable on the $6,000.

On the record before us, in our opinion, the respondent's view should be sustained.

We pass, as unnecessary of decision, the interesting question whether, where a corporation is in the business of selling annuities, on a basis of its own (here the annuity being a percentage of the "donation," measured by 10 percent of the annuitant's age), and differing from rates set by commercial insurance companies, it can logically be said that any part of the consideration was gift, or that commercial rates for annuities are material.

Though petitioner seems to suggest that 70 percent of the values transferred was intended as gift, and only 30 percent as premium, it is obvious that she can not prevail on such theory, for in that case, Miller having received $142,900, the aggregate amount excluded from his gross income in respect of the annuity would apparently be more than equal the aggregate premium, and thereafter the entire income would be taxable, under the latter part of section 22 (b) (2), with the result of more taxation than under the Commissioner's computation. That was the point in *Anna L. Raymond*, 40 B. T. A. 244; affd., 114 Fed. (2d) 140; certiorari denied, 311 U. S. 710. However, we are unable to agree that the evidence justifies a conclusion that 70 percent was considered gift. Some institutions had a general rule along that line, but the rule was not compulsory and each institution had its own rules. The witness relied on did not think that any particular part of the property was referred to in the contract as a gift, and testified that no specific reference, in the conversations (relative to setting up the annuity) was made to the rule above referred to, and that he could not say definitely what amount was by the college considered as an element of gift. Therefore, we have here, as in *F. A. Gillespie*, 38 B. T. A. 673, a situation where the element of gift is not proven as to amount; and of course, under *Anna L. Raymond, supra*, it can not be said, as a matter of law, that the gift is the amount above cost of an annuity from a life insurance company, for the question is one of fact. *Maud Gillespie*, 43 B .T. A. 399.

We do not think that the annuity contract is divisible, as petitioner seems to regard it, in seeking to prove the cost of an annuity produc-

ing $500 per month, as of the date of the death of her husband. The $500 per month was merely one provision of a contract originating on February 1, 1927, or November 6, 1926, dependent upon whether the contract or the annuity itself is considered (just here immaterial) and modified on September 6, 1933, and, if the evidence was complete that above the cost of an annuity from an insurance company there was gift, and the cost of an annuity from an insurance company was therefore determinative, in our opinion it would be the cost of the original annuity, at the time when the consideration was paid, and, on petitioner's theory divisible between annuity cost and gift. We can perceive no logical reason for inquiry into cost of annuity at the date of the husband's death or beginning of payments to the petitioner. Logically to do so, and to allocate between cost of annuity and gift, the original consideration in property would have to be given a value as of the same date. We therefore consider as of no help the cost of an annuity as of the date of Miller's death. In fact, however, even that was not proven, for he died March 26, 1936, and proof is made of annuity cost as of April 1, 1936, with evidence that a change in rates was effective on April 1, 1936, but no evidence of the previous rate. Obviously, even on petitioner's theory, the proof was insufficient, and we have no evidence upon which any apportionment or approximation could be attempted, under *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. The change in rate may have been great or slight. We may not merely guess at it. In this connection, we have regarded only the evidence as to cost of an annuity purchased from John Hancock Life Insurance Co. Figures from other companies were hearsay only, and may not be and were not given weight.

We conclude and hold that the petitioner has not shown error in the inclusion of $6,000, the full annuity received, in her gross income for the taxable year.

*Decision will be entered for the respondent.*