Mary J. Ware v. Commissioner.
Ware v. Commissioner
Docket No. 7266.
United States Tax Court
1946 Tax Ct. Memo LEXIS 96; 5 T.C.M. (CCH) 749; T.C.M. (RIA) 46208; August 26, 1946
Muckleroy McDonnold, Esq., 503 National Bank of Commerce Bldg., San Antonio, Tex., for the petitioner. P. Louis Bergeron, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The respondent determined deficiencies in Federal income tax for the calendar year 1941 and income and victory tax for the calendar year 1943. The deficiency determined for the year 1941 was $211.59, and petitioner claims she overpaid her income tax for that year in *97 the amount of $58.76. The deficiency originally determined by the respondent for the year 1943 was $720.90, but in his amended answer this deficiency was increased to $748.38. By amended petition filed at the hearing, petitioner admitted that the tax in controversy for the year 1943 is $748.38. The sole question is - Are annual payments of $3,600 received by petitioner in monthly installments during the calendar years 1941, 1942 [1] and 1943 taxable as ordinary income under section 22 (b) (2), I.R.C., or as gains upon the sale or exchange of capital assets, under section 117 (b), I.R.C.
Findings of Fact The petitioner is an individual residing in Del Rio, Texas. She filed her income tax returns for the taxable years with the collector of internal revenue for the first collection district of Texas. H. J. Ware, hereinafter referred *98 to as the decedent, was actively engaged in business in Del Rio during the taxable years 1917 to 1921. He died in 1930. In 1918 decedent was seventy-five years of age and petitioner was fifty-eight years of age. On May 1, 1918, decedent and petitioner entered into a contract with E. A. Hatton and A. M. Oppenheimer wherein they agreed to "Grant, Sell and Convey" to Hatton and Oppenheimer a parcel of improved real estate situated in Del Rio. The contract contained, among others, the following pertinent provisions: 2. That as the purchase price for the above described land and premises and as the consideration for the conveyances of same to them by said parties of the first part, said parties of the second part have this day paid to said parties of the first part the sum of TWO THOUSAND and FIVE HUNDRED DOLLARS ($2,500.00) receipt of which is hereby acknowledged by said parties of the first part. And in addition thereto said parties of the second part hereby jointly and severally agree and bind themselves, their heirs, executors, administrators and assigns to pay to the said H. J. Ware, the further sum of One Hundred and Fifty Dollars ($150.00) on or before the 1st day of each and *99 every month hereafter as long as he shall live, and in case of the death of the said H. J. Ware, prior to the death of the said Mary Jeannette Ware, to thereafter pay to her a like amount on or before the 1st day of each and every month as long as she shall live, such monthly payments to be made by said parties of the second part, their heirs, executors, administrators or assigns, placing or causing the same to be placed to the credit of the said H. J. Ware with the First National Bank of Del Rio, in Del Rio, Val Verde County, Texas, on or before the 1st day of each and every month hereafter as long as he shall live, and in the case of the death of the said H. J. Ware, prior to that of the said Mary Jeannette Ware, by in like manner placing or causing the same to be placed to her credit with said First National Bank of Del Rio, on or before the 1st day of each and every month thereafter as long as she shall live. * * *
11. That the vendor's lien is hereby retained by said parties of the first part upon and against said land and premises and all improvements thereon to secure the payment of all of the sums of money agreed to be paid by said parties of the second part, their heirs, *100 executors, administrators or assigns, as well as to secure the performance by them of all of the acts and things herein agreed to be done and performed or caused to be done and performed by said parties of the second part, their heirs, executors, administrators or assigns; and that upon the payment of all such sums of money and the performance of all such acts and things by and on behalf of said parties of the second part, their heirs, executors, administrators and assigns, according to the tenor and effect hereof, and not before, this conveyance shall become absolute; and such vendor's lien is hereby expressly acknowledged by said parties of the second part. On May 1, 1919, a similar contract was entered into between decedent and petitioner and John L. Foster, W. A. Earnest and R. L. Miers. The terms and conditions of this contract were similar to those in the contract of May 1, 1918, except as to the parties involved, the amount of the down payment and the property. The lot involved in the May 1, 1919 contract was acquired by petitioner and decedent in 1896 and was community property. Soon thereafter, they erected a building thereon. Decedent placed a March 1, 1913 value of $15,000 *101 on the property. Depreciation in the amount of $1,000 had been sustained prior to May 1, 1918 leaving a net value of $14,000 as of the date of sale. The lot involved in the May 1, 1919 contract was acquired by petitioner and decedent in 1896 and was community property. Soon thereafter, they erected a building thereon. Decedent placed a March 1, 1913 value of $10,000 on the property. Depreciation in the manner of $1,392 had been sustained prior to May 1, 1919 leaving a net value of $8,608 as of the date of sale. According to the actuarial table, Table A of Regulations 37, the present value of an annuity of $1.00 based on the life expectancy of petitioner at her age at the time of the contracts was as follows: May 1, 1918 (58 years of age)
$10.0463
May 1, 1919 (59 years of age)
9.73131 Table A of Regulations 80 is similar to that of Regulations 37. During the period from May 1, 1918 and May 1, 1919 to the date of death in 1930, decedent received the monthly payments of $150 each, called for by the said contracts. No Federal estate tax return was filed by the executors of the estate of H. J. Ware after his death in 1930. Decedent died testate, and at the time *102 of his death petitioner was seventy years of age. From the date of death in 1930 through 1943, petitioner has continued to receive the $150 monthly installments provided for by the contracts of May 1, 1918, and May 1, 1919. On March 6, 1942, petitioner filed her individual income tax return for the calendar year 1941 with the collector of internal revenue for the first district of Texas. In arriving at her net income, petitioner reported $1,080 or 30 percent of the $3,600 annual payments under the contracts as capital gains. On March 14, 1944, petitioner filed her return for the calendar year 1943. In arriving at her net income petitioner reported $1,800 or 50 percent of the $3,600 annual payments under the contracts as capital gains. Decedent discussed the said sales with the then collector of internal revenue at or about the time he sold additional property in 1921. He was advised by that official that the moneys so received on the 1918 and 1919 contract did not constitute income inasmuch as such moneys represented return of purchase price. After an examination by the then collector of internal revenue made on or about December 12, 1922, at which time individual income *103 tax returns on a community property basis were signed by decedent and petitioner "under protest" for the calendar years 1918 and 1919, decedent and petitioner were notified of delinquent income taxes due for said years as follows: Decedent
Petitioner
Years
Years
1918
1919
1918
1919
Income tax
$161.29
$270.75
$173.29
$286.76
Penalty
40.32
67.69
43.32
71.69
Interest
33.88
48.73
36.40
51.62
In arriving at the taxable income for each year the then collector of internal revenue determined taxable profit from the two transactions as follows: Contract of 5-1-18: Cash payment
$ 2,500.00
Present value of contract based on life expectancy age 58 ($10.0463
X $1800.00)
18,083.34
Sales Price
$20,583.34
Less: Cost (March 1, 1913 value)
$15,000.00
Depreciation sustained
1,000.00
14,000.00
Net profit
$ 6,583.34
Contract of 5-1-19: Cash payment
$ 2,650.00
Present value of contract based on life expectancy age 59 ($9.73131
X $1800.00)
$17,516.36
Sales Price
$20,166.36
Less: Cost (March 1, 1913 value)
$10,000.00
Depreciation sustained
1,392.00
8,608.00
Net profit
$11,558.36
*104 On January 30, 1923, decedent, through his then attorney, protested the determination of deficiencies referred to above and more particularly as it pertained to the two real estate transactions on the grounds (a) that he was entitled to recover his cost before any part of the monthly payments became taxable, and (b) in the alternative, if the monthly payments were taxable then the transaction was taxable as an installment sale. In a letter dated April 12, 1923, the Commissioner of Internal Revenue advised decedent in part as follows: The facts in regard to the sale of property under an annuity contract have been carefully considered, and you are advised that since it was impossible to determine the total sale price, the payments made are regarded as a return of capital and no profit is to be reported until the cost or value of the property has been received. When a return of the capital invested has thus been received by the taxpayer, the payments received by him thereafter will be taxable as income for the year during which received. A copy of the said letter was also sent to the then collector of internal revenue. The proposed deficiencies previously referred to above were *105 not asserted against decedent and petitioner for either the taxable year 1918 or the taxable year 1919. In a statutory notice of deficiency dated February 2, 1945, the respondent notified petitioner of his determination that the full amount of $3,600 received by her in monthly installments during the calendar years 1941, 1942 and 1943 was taxable in full. Prior to his death in 1930, decedent had recovered amounts in excess of the net depreciated value of the properties as follows: CONTRACTS
5-1-18
5-1-19
Cash
$ 2,500.00
$ 2,650.00
Installments, $150.00 to 12-31-30
22,650.00
20,850.00
Total Payments
$25,150.00
$23,500.00
Less: Depreciated costs
14,000.00
8,608.00
Annuities over and above costs
$11,150.00
$14,892.00
Petitioner for the ten year period subsequent to decedent's death, January 1, 1931 to December 31, 1940, recovered under the annuity contracts $36,000. Respondent determined that the annuity payments of $3,600 paid to petitioner in 1941, 1942 and 1943 were taxable as ordinary income. Opinion The petitioner contends that the annual payments made to her under the contracts of May 1, 1918, and May 1, 1919, constitute part *106 of the selling price of the two parcels of land sold during those years, and that this income is taxable as a gain upon the sale or exchange of a capital asset under the provisions of Section 117 (b), I.R.C.[2]
The respondent contends that the annual payments are taxable as annuities under the provisions of Section 22 (b) (2), I.R.C.[3]
*107 In support of her contention, petitioner cites Snell v. Commissioner, 97 Fed. (2d) 891. In that case the Circuit Court of Appeals for the Fifth Circuit held that where taxpayer chose to defer realization of profits from sales, in 1923, of realty which he had held over two years primarily for sale in course of his business, by accepting payment in installments and so returning the sales, he risked change of tax laws, and profits realized after passage of the Revenue Acts of 1924 and 1926 were taxable under such acts, which excluded such realty from definition of "capital assets" and hence made capital net gains rates inapplicable. We are unable to see how the cited case helps petitioner. Even overlooking the decision of the court which is that there was no sale of a capital asset and therefore no capital gain, which is contrary to the contention of petitioner herein, the facts of the cited case are clearly distinguishable from those here involved. Neither petitioner nor the decedent, as far as the record discloses, was engaged in the business of selling property, in 1918 or 1919, on the installment basis or otherwise. Moreover, the contracts of May 1, 1918 and May 1, 1919, may *108 not be interpreted as an ordinary sale or exchange of capital assets with payment to decedent and petitioner extended over a period of several years. Similar contracts to those here involved have been considered by this and other courts in the past and have been construed to be annuity contracts. Maud Gillespie, 43 B.T.A. 399, aff'd 128 Fed. (2d) 140; Frank C. Deering, 40 B.T.A. 984; J. Darsie Lloyd, 33 B.T.A. 903; Raymond v. Commissioner, 114 Fed. (2d) 140, cert. denied 311 U.S. 710; Elizabeth L. Beattie, 6 T.C. 609, (on appeal 6 C.C.A.). In Maud Gillespie, supra, in considering a contention by another taxpayer similar to that made by the petitioner herein, this court said: (1) We may dispose of the first argument of the petitioner without extended consideration. The contract of May 15, 1929, may not, in our view, be interpreted as an ordinary sale or exchange of capital assets with payment to petitioner extended over several years. The distinguishing peculiarity of an annuity - that its continuance is dependent entirely on the life of the recipient of the payments - is here *109 present. By statute, amounts received under contracts of this nature are made taxable to a limited degree and the direction of the statute may not be ignored. It can make no difference, in our opinion, that the consideration for the annuity was the transfer of property rather than money, and in this view we are sustained by Florence L. Klein, 6 B.T.A. 617, and Guaranty Trust Co. of New York, Executor, 15 B.T.A. 20. In 1918 and 1919, decedent and petitioner exchanged properties for fixed monthly installments to be paid to decedent during his lifetime and to petitioner after his death. Petitioner on brief concedes that if the contracts providing for such transfers are annuity contracts then the full annual payments are taxable inasmuch as decedent and petitioner recovered the basis of the properties in prior years. Upon the authority of the cases above cited, we hold that they are annuity contracts, and our best judgment is that the respondent did not err in his determination that the annuity payments were taxable as ordinary income within the meaning of section 22 (b) (2). Decision will be entered for the respondent. Footnotes
1. Although no deficiency has been asserted for 1942, petitioner's income and income tax liability for that year have to be taken into consideration because of the transition of the tax collection system in 1943 to a current pay-as-you-go method as provided in Sec. 6 of the Current Tax Payment Act of 1943.↩
2. INTERNAL REVENUE CODE. SEC. 117. CAPITAL GAINS AND LOSSES (1941). (b) Percentage taken into account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income; * * *
50 per centum if the capital asset has been held for more than 24 months. (The Code provision for the years 1942 and 1943 is the same as the above except that the period for which the capital asset must be held is "more than 6 months," instead of more than 24 months.")↩
3. SEC. 22. GROSS INCOME. * * *
(b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
(2) Annuities, etc. - (A) In General. - * * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year) until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *.↩