**COMMISSIONER OF INTERNAL REVENUE v. KANN'S ESTATE et al.**

No. 9694.

United States Court of Appeals Third Circuit.

Argued Dec. 9, 1948.

Decided April 19, 1949.

O'CONNELL, Circuit Judge, dissenting.

Hilbert P. Zarky of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., and Sewall Key and George A. Stinson, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Ferdinand T. Weil of Pittsburgh, Pa. (F. T. Weil, S. Allen Vatz and Weil & Vatz, all of Pittsburgh, Pa., on the brief), for respondents.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

BIGGS, Chief Judge.

Mrs. Bertha F. Kann, the decedent, sold certain securities to her children in return for their unsecured promises to pay her life annuities. The question presented for our determination is: Did the Tax Court err in holding[1] that the decedent realized no taxable gain under Section 111(a) of the Internal Revenue Code, 26 U.S.C.A. § 111(a), and the applicable regulation on the ground that annuity contracts undertaken by individual obligors do not have an ascertainable fair market value as a matter of law? The pertinent statute and regulation are in the margin.[2] See also Section 22 of the Internal Revenue Code, 26 U.S.C.A. § 22, set out in note 3.[3]

As the Tax Court pointed out it is not necessary to decide whether the entire capital is to be recouped before any amount becomes taxable, J. Darsie Lloyd v. Commissioner, 33 B.T.A. 903; Frank C. Deering v. Commissioner, 40 B.T.A. 984, or

---

[1] In an unreported decision.

[2] "Sec. 111. Determination of amount of, and recognition of, gain or loss.

"(a) Computation of gain or loss. The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

"(b) Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

"(c) Recognition of gain or loss. In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112."

Treasury Regulations 103, promulgated under the Internal Revenue Code: "Sec. 29.111-1. Computation of gain or loss.— Except as otherwise provided, the Internal Revenue Code regards as income or as loss sustained, the gain or loss realized from the conversion of property into cash, or from the exchange of property for other property differing materially either in kind or in extent. The amount realized from a sale or other disposition of property is the sum of any money received plus the fair market value of any property which is received. The fair market value of property is a question of fact, but only in rare and extraordinary cases will property be considered to have no fair market value. The general method of computing such gain or loss is prescribed by section 111, which contemplates that from the amount realized upon the sale or exchange there shall be withdrawn a sum sufficient to restore the adjusted basis prescribed by section 113(b) and sections 29.113(b) (1)-1 to 29.113(b) (3)-2, inclusive (i. e., the cost or other basis provided by section 113(a), adjusted for receipts, expenditures, losses, allowances, and other items chargeable against and applicable to such cost or other basis). The amount which remains after the adjusted basis has been restored to the taxpayer constitutes the realized gain. If the amount realized upon the sale or exchange is insufficient to restore to the taxpayer the adjusted basis of the property, a loss is sufficient in the amount of the insufficiency. The basis may be different depending upon whether gain or loss is being computed."

[3] Internal Revenue Code:

"Sec. 22. Gross income.

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

*        *        *        *        *

(2) Annuities, etc. * * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * * "

whether a 3%[4] annual return on an investment computed at insurance company rates, Anna L. Raymond v. Commissioner, 40 B.T.A. 244, affirmed 7 Cir., 114 F.2d 140, certioriari denied 311 U.S. 710, 61 S.Ct. 319, 85 L.Ed. 462, is to be charged as ordinary income under Section 22(b)(2) until the capital expended has been recovered. See Maude Gillespie v. Commissioner, 43 B.T.A. 399, reversed on other grounds, 9 Cir., 128 F.2d 140. The question at bar turns on the meaning to be ascribed to the phrase "fair market value" in Section 111(b) and the regulation.

▆▆▆ The petitioner would have us change what we believe to be a salutary rule of law established by the Board of Tax Appeals in the Lloyd case, supra, that where both the annuitant's life span and the obligor's ability to pay are uncertain no fair market value should be ascribed to the contract or obligation. That rule was again enunciated in the Deering case, supra, and was viewed with approval in Bella Hommel v. Commissioner, 7 T.C. 992. To elaborate a little, the Tax Court has held in the instant case, as in the past, that where obligors are individuals, whether rich or poor, their obligations to pay in the future do not possess such standing as to come within the purview of the statute, that such obligations possess no value by way of ordinary business. It should be noted that this court took a similar view in Evans v. Rothensies, 3 Cir., 114 F.2d 958, and in Cassatt v. Commissioner, 3 Cir., 137 F.2d 745, wherein, it will be observed, the Commissioner took a position diametrically opposed to that which he seeks to maintain in the case at bar. See also Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. Like the Tax Court we think that there is little to be gained by giving up the principle, now well established, that an agreement by an individual to pay a life annuity to another has no "fair market value" for purpose of computing capital gain. In conclusion we state parenthetically that there is little in the record which can support the Commissioner's view that the transactions between Mrs. Kann and her children were ordinary arm's length business transactions. See the Raymond case, supra.

The decision of the Tax Court will be affirmed.

O'CONNELL, Circuit Judge (dissenting).

I agree with my brethren that the record before us offers little to support the assertion that decedent₄engaged in "ordinary arm's length business transactions" when she transferred to her children and their respective spouses the 1,120 shares of stock in return for their unsecured promises to pay her $24,672 per annum. The considerable doubt I have concerning the purported nature of the transactions dictates to me the appropriate action to be taken by this court on the tax liability of decedent on those shares of stock.

Decedent was 77½ years of age at the time. Each of her eight children received an identical number of shares of the stock, and each made an unsecured promise to pay her $3,084 per annum. The stock was in a company over which her family had the controlling interest. The executed instruments themselves disclose that retention of family control over the company was an integral element in the transactions. That the value of the shares which she transferred was greater than that necessary to purchase the so-called annuity of $24,672 per annum is demonstrated by the fact that, the same year, she paid a gift tax on what was computed to be the $22,733.89 difference in value between the 1,120 shares of stock and what (according to the American Annuitance Mortality Table) was the total consideration necessary to derive annual installments of $24,672.

---

[4] During the years 1939 and 1940, inclusive, the taxable years in question, Mrs. Kann received through the annuities $24,672 a year, the total amounting to $59,344. She did not include as taxable income on her income tax returns for these years any portion of the annuities which she received. The respondents in the instant case, learning that the decedent had not included in her income tax returns as taxable income 3% of the consideration which she paid for the annuities in accordance with Section 22(b)(2) of the Internal Revenue Code, 26 U.S.C.A. § 22(b)(2), filed amended returns and paid the additional taxes as reflected by the amended returns.

There is still another indication of how decedent viewed the transactions: despite the provisions of Section 22(b) (2) of the Internal Revenue Code, calling for inclusion each year of 3% of the aggregate premiums paid for an annuity, decedent made no such inclusions in her tax returns after these transactions were consummated.

Perhaps an explanation, credible and consistent, with an annuity motive, could be offered to show why the same arrangement was made with all eight children, and why no security was required of them; but the combination of all the circumstances outlined above, particularly the payment of a gift tax on what was reputed to be a "sale", seems to me to lead to no conclusion other than that an aged woman made what she believed to be an inter vivos disposition, substitutional of a testamentary one, of that part of her estate represented by the shares of stock. The facts are to me consonant only with the inference that, for federal tax purposes, what decedent really did was to create eight trusts, in each of which she made herself life beneficiary to the extent of $3,084 per annum.

That decedent and her children chose to designate the agreements as private annuity contracts can and should be no obstacle to an inquiry into the real nature of the transactions here involved. Indeed, decedent herself recognized the apparent absence of a bona fide sale when she accepted the Commissioner's valuation and paid the gift tax.

Consequently, as I analyze this case, neither Section 22(b) (2) nor Section 111 of the Internal Revenue Code is properly applicable, there being no sale or capital gain involved. In practical effect, decedent seems to me to have done no more than pass legal title to 1,120 shares, in return for a reserved life estate as to $24,672 per annum of the income therefrom, and a power to invade the corpus, if necessary, to supplement the income if less than $24,672 per annum. On principles not unlike those enunciated in Commissioner of Internal Revenue v. Tower, 1946, 327 U. S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, and Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, the Commissioner and the Tax Court should have pierced the window-dressing and determined whether the income from the 1120 shares was taxable to decedent under the provisions of Section 22(a) of the Internal Revenue Code, as long as she remained alive, the shares being part of her estate at her death. Cf. Commissioner of Internal Revenue v. Church's Estate, 335 U.S. 632, 69 S.Ct. 322, 337.

Under the view I take, questions of "fair market value" are immaterial at this stage of the proceedings. I would vacate the decision of the Tax Court and remand the cause for a determination of tax liability on the annual receipt of $24,672 by the decedent.